Ex parte Donald Richard SCALES.

No. 71455.

Court of Criminal Appeals of Texas,
En Banc.

May 26, 1993.

Donald Richard Scales, pro se.

Robert Huttash, State's Atty., Austin,
for the State.

## OPINION

MEYERS, Judge.

This is a post conviction application for
writ of habeas corpus filed pursuant to
Article 11.07 of the Texas Code of Criminal
Procedure.

Applicant was initially convicted of pos-
session of a prohibited weapon on June 28,
1982, and sentenced to nine years confine-
ment under a three count indictment in
which two of the counts had been aban-
doned prior to trial. Subsequently, the
State reindicted applicant on the previously
abandoned charge of aggravated assault in
Cause No. 38,376 in the 56th Judicial Dis-
trict Court of Galveston County. Applicant
pled guilty on July 12, 1982, and was sen-
tenced to eight years confinement. On De-
cember 2, 1992 we remanded this cause to
the trial court for a further evidentiary
hearing on the offenses in question.

Applicant seeks a writ of habeas corpus
on the grounds that his successive prosecu-
tion and conviction for aggravated assault
was obtained in violation of the Texas
"carving doctrine," a judicially developed
rule barring multiple prosecutions and con-
victions "carved" out of a single criminal
transaction. Applicant contends he is enti-

tled to have his conviction for aggravated assault set aside.[1]

This Court abandoned the carving doctrine in *Ex Parte McWilliams*, 634 S.W.2d 815 (Tex.Crim.App.1982) (Opinion on Rehearing), holding that it was not supported by constitutional or statutory provisions and, as applied, only worked to encourage crime. *Id.* at 822. We decided that application of the doctrine did not protect any fundamental rights since due process was satisfied by determining double jeopardy questions under the constitutions of the United States and the State of Texas. *Id.*

Although applicant in the instant cause pled guilty to the aggravated assault charge shortly before *McWilliams* was decided, we have held that abandonment of the carving doctrine should be applied retroactively. *Ex Parte Clay*, 675 S.W.2d 765 (Tex.Crim.App.1984). This Court is now called upon to decide whether such retroactive application violates that part of the U.S. Constitution which forbids *ex post facto* laws.

█ Initially, we note that the *Ex Post Facto* Clause in Article I, Section 10 of the United States Constitution is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government. *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); *Frank v. Magnum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). However, the Supreme Court has determined that if a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State's highest court is also barred by the Due Process Clause from achieving precisely the same result by judicial construction. *Bouie v. City of Columbia*, 378 U.S. 347, 353–354, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964).

A few years ago, in *Clay v. Lynaugh*, 846 F.2d 8 (5th Cir.1988), and *Rubino v. Lynaugh*, 845 F.2d 1266 (5th Cir.1988), the United States Fifth Circuit Court of Appeals held that *ex post facto* prohibitions of the federal constitution forbade this Court's attempt to abolish the carving doctrine retroactively.[2] As it turns out, these opinions were not reasoned in a constitutionally acceptable way, and they are currently of little precedential value in light of *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).[3] But it

---

1. Applicant also argues that his conviction for aggravated assault violates double jeopardy principles because that conviction and his prior conviction for possession of a prohibited weapon arose out of the same transaction and proof of the possession of a prohibited weapon was necessary to prove the aggravated portion of the assault conviction. This Court declined to set this allegation for submission.

2. The Fifth Circuit in *Rubino* and *Clay* held that the Supreme Court's decisions did not limit the scope of *ex post facto* prohibitions to only those categories set forth in *Beazell*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), but stated more broadly that retroactive legislation contravenes *ex post facto* law if it deprives an accused of a "substantial protection" under law existing at the time of the crime. *Rubino, supra,* at 1274. See also, *Clay, supra,* at 9–10. In reaching its conclusion, the Fifth Circuit relied on *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). An *ex post facto* law was defined in *Kring* as one which, " 'in relation to the offense or its consequences, alters the situation of a party to his disadvantage.' " *Kring, supra,* 107 U.S. at 228–229, 2 S.Ct. at 449. Applicant argues that since he would have been entitled to have his conviction

for aggravated assault vacated under the carving doctrine in effect at the time of his conviction, he is being deprived a "substantial protection" that he otherwise would be entitled to.

In *Collins v. Youngblood,* the Supreme Court stated that the Court in *Kring* was unjustified in departing from the original understanding of the *ex post facto* clause. 497 U.S. 37, 110 S.Ct. 2715, 2722, 111 L.Ed.2d 30 (1990). The Supreme Court expressly disavowed a defendant's reliance on "substantial protections" to protect vested rights which are otherwise protected under double jeopardy laws. The Court held that caselaw which had applied and expanded the *ex post facto* clause was inconsistent with *ex post facto* law as it was understood at the time the Constitution was adopted and relied on reasoning the Supreme Court has not followed since *Thompson* was decided. This has caused confusion in state and lower federal courts about the clause's scope. *Kring* and *Thompson* were therefore overruled. *Collins, supra,* 497 U.S. at 49–51, 110 S.Ct. at 2723–24. Thus, the rationale used to support the Fifth Circuit's decisions in *Rubino* and *Clay* is no longer valid.

3. Adopted by this Court in *Grimes v. State,* 807 S.W.2d 582, 585–86 (Tex.Crim.App.1991). See also *Ex Parte Robinson,* 792 S.W.2d 109 (Tex. Crim.App.1990).

does not follow that a retroactive abandonment of the carving doctrine is, therefore, constitutionally satisfactory.

In *Collins*, the Supreme Court examined the history and evolution of *ex post facto* law and clarified that the original test as summarized in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68 (1925), is still faithful to the Court's best knowledge of the original understanding of the definition of an *ex post facto* law. Caselaw which has expanded that definition to include "substantial protections" to which the defendant would have otherwise been entitled under the law as it existed at the time of commission of the offense was overruled. *Collins, supra,* 497 U.S. at 49–50, 110 S.Ct. at 2723.

■ An *ex post facto* law is an enactment that (1) punishes as a crime an act previously committed, which was innocent when done, (2) makes more burdensome the punishment for a crime, after its commission, or (3) deprives one charged with a crime of any defense available according to the law at the time when the act was committed. *Collins*, 497 U.S. at 51–52, 110 S.Ct. at 2724; *Beazell*, 269 U.S. at 169–170, 46 S.Ct. at 68–69. Essentially, legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts. *Collins, supra* 497 U.S. at 41–43, 110 S.Ct. at 2719.

In *Collins* the Supreme Court held that a Texas statute that allowed an appellate court to reform improper verdicts did not violate the *ex post facto* clause. 497 U.S. at 51–52, 110 S.Ct. at 2724. Often in determining what is or is not barred under the clause, courts have resorted to focusing on the "procedural" or "substantive" label of a statute or court ruling. *See Collins*, 497 U.S. 37 at 45–46, 110 S.Ct. 2715 at 2721; *Gibson v. Mississippi*, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896). However the term "procedural" has not been defined in any meaningful manner, and the term offers little guidance for an appellate court to use. *See Collins*, 497 U.S. at 45–46, 110 S.Ct. at 2720. Rather than view the label of the statute, it is infinitely more productive to look at the changes which occur.

As the Supreme Court noted, "it is logical to think that the term ["procedural"] refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Id.*

Carving is not now, nor was it ever, merely a rule of procedure. For the many years in which it controlled allowable units of prosecution in Texas, it represented a substantive policy of this State that no more than one offense ever resulted from a single criminal transaction. The prosecuting authorities had considerable discretion in many cases to decide what manner of offense that might be, since integrated conduct often violated a number of different statutes at once. Yet it was undoubtedly the law in Texas that a person committed only one offense for each criminal transaction in which he participated.

■ Essentially in our review today we must determine the scope of the "carving doctrine." In this very case, applicant is now liable to conviction for two offenses, or more. Under the carving doctrine, if he engaged in only one criminal transaction, he would be liable to only one criminal conviction because, under the carving doctrine, the transaction *was* the offense. Likewise, where he might once have been exposed only to the punishment prescribed for unlawfully carrying a weapon, he must now expect to face the punishment prescribed for aggravated assault as well, even though he may have committed but a single criminal transaction. And finally, where the law once entitled him to prevent prosecution for aggravated assault after a conviction for the same criminal transaction, he is now denied the benefit of this substantive defensive theory. Therefore, our decision to make the abandonment of the "carving doctrine" retroactive in *Ex Parte Clay* violated the Due Process Clause of the Federal Constitution. As such *Ex Parte Clay* and other cases in conflict with this decision are overruled.

Finally, we must determine if applicant's second conviction violates the Texas "carv-

ing doctrine." [4]

The facts of the underlying offenses are as follows. In a dispute at a gas station applicant fired a sawed-off shotgun at a clerk. Applicant fled the scene. Approximately six to eight minutes later applicant was apprehended by a peace officer, in response to the commotion and noise that had arisen from the events at the gas station. Upon apprehending applicant the peace officer discovered the prohibited weapon on applicant's person. Subsequently, applicant was found guilty of possession of a prohibited weapon and aggravated assault.

Applicant's case is controlled by *Hawkins v. State*, 535 S.W.2d 359 (Tex.Crim. App.1976). In *Hawkins*, the defendant was seen moving in the direction of a grocery store and later was seen peeking around the corner of that store with a sawed-off shotgun. When inside, the defendant robbed the store and fled. The defendant was convicted both of aggravated robbery with a deadly weapon and possession of a prohibited weapon, specifically the sawed-off shotgun. We rejected the defendant's contentions and held the two prosecutions were not barred under the "carving" doctrine. We noted that "the moment [the defendant] was placed in possession of the prohibited weapon the offense of possession of a prohibited weapon was complete." 535 S.W.2d at 362. We see no relevant distinguishing factor between the possession of the prohibited weapon occurring just prior to or just subsequent to the second aggravated offense.

There being no logical distinction between applicant's case and our holdings in *Hawkins v. State*, the requested relief by applicant is hereby denied.

CLINTON, MILLER, CAMPBELL and OVERSTREET, JJ., concur in the result.

---

**4.** Recently, this Court has defined the scope of review for decisions based on the "carving doctrine." *Clay v. Lynaugh*, 770 S.W.2d 800 (Tex. Crim.App.1989) (opinion on certified question from the Fifth Circuit Court of Appeals); *Rubino v. Lynaugh*, 770 S.W.2d 802 (Tex.Crim.App. 1989) (opinion on certified question from the Fifth Circuit Court of Appeals). Under our prior carving jurisprudence, two tests were being used. In *McWilliams* the Court noted:

Initially, carving was applied when the two offenses charged contained common material elements or when the two offenses required the same evidence to convict. *Herera v. State*, 35 Tex.Cr.R. 607, 34 S.W. 943 (1896). This

Court added the "continuous act or transaction" test in *Paschal v. State*, 49 Tex.Cr.R. 111, 90 S.W. 878 (1905). Since that time the 'same evidence' and the 'continuous assaultive transaction' tests have been randomly applied. 634 S.W.2d at 823. *See also, Orosco v. State*, 590 S.W.2d 121 (Tex.Crim.App.1979) (Douglas, J., dissenting); *Ex parte Fitch*, 580 S.W.2d 372 (Tex.Crim.App.1979) (Clinton, J., dissenting). As we noted in *Rubino v. Lynaugh*, we are not inclined to determine which test should be used in the future. 770 S.W.2d at 803.

Because this applicant's case is controlled by our then-existing caselaw, we will not undertake an analysis of the two "carving" tests.